# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 10, 2012   Decided February 10, 2015

No. 11-1320

OZARK AUTOMOTIVE DISTRIBUTORS, INC., DOING BUSINESS AS
O'REILLY AUTO PARTS,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 11-1352

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

*Jonathan A. Siegel* argued the cause for petitioner. With him on the brief was *Joseph E. Schuler*.

*Milakshmi V. Rajapakse*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney. *Michelle M. Devitt*, Trial Attorney, entered an appearance.

Before: TATEL, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is a refusal-to-bargain case. The company contested the union's certification, after an election, as the bargaining representative of company employees. The National Labor Relations Board ordered the company to bargain with the union. The company petitioned for judicial review. The Board cross-petitioned for enforcement. The main issues are whether, during a hearing on the validity of the election, the hearing officer erred in revoking the company's subpoenas *duces tecum*, and if so, whether the error prejudiced the company.

After we heard oral argument we noticed that one of the Board Members on this case—Craig Becker—was a recess appointee. We therefore ordered the case held in abeyance pending the Supreme Court's review of *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), *cert. granted*, 133 S. Ct. 2861 (2013). The Supreme Court issued its decision at the end of June 2014. *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014). On November 7, 2014, another panel of our court decided that Becker's appointment did not violate the Recess Appointments Clause of the Constitution. *Mathew Enterprise, Inc. v. NLRB*, 771 F.3d 812 (D.C. Cir. 2014). On December 8, 2014, we therefore issued an order placing this case back on the calendar. Order Granting Mot. to Lift Abeyance, *Ozark Auto. Distribs., Inc. v. NLRB*, No. 11-1320 (D.C. Cir. Dec. 8, 2014).

I.

The company—Ozark Automotive Distributors, Inc., doing

business as O'Reilly Auto Parts—is a retail distributor of automotive parts. On July 15, 2010, the Teamsters, Chauffeurs, Warehousemen, Industrial, and Allied Workers of America, Local 166, International Brotherhood of Teamsters, filed a petition with the Board to represent the "full-time and regular part-time route drivers" at the company's distribution center in Moreno Valley, California. The election took place on August 13, 2010. Of the thirty-two drivers eligible to vote, seventeen voted in favor of the union, fourteen voted against it, and one ballot was declared void.

The company filed objections, alleging that agents of the union engaged in threats, harassment, coercion, and appeals to racial prejudice, all of which interfered with employee free choice, so much so that it made "a fair election impossible." The objections were serious, not only because of their content, but also because the election was so close. The switch of two votes would have changed the outcome. After reviewing the company's objections and its supporting evidence, the Board's regional director ordered an evidentiary hearing to determine the validity of the company's charges.

Before the hearing began, the company served subpoenas *duces tecum* on the union and on Oscar Castillo, an employee the company alleged had been acting as a union agent. The subpoena to the union sought documents relating to the company, to its employees eligible to vote, and to each of several named employees "serving, acting or functioning as an agent, official, representative or steward of the Union." The subpoena to the union also sought information about communications between the union, including its representative Ruben Luna, and the company's employees, and between those

employees the company alleged were acting as union agents—Oscar Castillo, Manuel Reyes, and Robert Castilleja.[1]

The company's subpoena to Castillo sought telephone records and other documents relating to calls between Castillo and the union, and between Castillo and other employees eligible to vote in the election. (The relevant portions of both subpoenas are contained in an addendum.)

The union filed an objection to a portion of the subpoena,[2] arguing that the "objected-to Requests are so vague and overbroad as to implicate information that is protected by the attorney-client and attorney work-product privileges." "The objected-to Requests," the union continued, "do not describe with any particularity the evidence whose production is required, and seek documents which clearly do not relate to the discrete issues framed in this case." At the hearing, Castillo—who was represented by the union's attorney—made an oral motion that the subpoena served on him should be revoked for the same reasons.

The hearing officer told the parties that she would not rule on the subpoenas until after she heard more evidence. Her reasoning was that the company might "get some of the evidence through testimony," and "[i]f not," she would "revisit

---

[1] Although not mentioned in this subpoena, the company also alleged that Adrian Garcia was acting as a union agent.

[2] The union did not object to the company's requests for documents relating to communications between the union and employees Castilleja, Reyes, and Castillo when "serving, acting or functioning as an agent" of the union (requests 1–3) and for all other documents relating to these employees in their capacity as union agents (requests 7–9). The union responded that no such documents exist.

this before the hearing closes." The company objected on the ground that deferring the ruling prejudiced its case. In response to the hearing officer's comment that the subpoenas requested documents from dates outside the "critical period" (the time between the filing of the representation petition and the election), the company offered to narrow the scope of the requests to the critical period. But the hearing officer repeated that she would postpone her decision about the subpoenas until the end of the hearing.

At the close of testimony, the hearing officer granted the union's and Castillo's motions to revoke the subpoenas. Without having examined the documents the company sought, the hearing officer expressed concern about the employees' confidentiality interests and the need to protect their right to engage in union activity (their Section 7 rights).[3] The hearing officer also questioned the relevance of some of the requests. She declined to narrow the scope of the subpoenas, explaining that she would not require the union or Castillo to produce any documents because of her "concern with possible Section 7 activity by employees."

The hearing officer recommended that the Board overrule the company's objections and certify the union. Although Castillo, Reyes, Castilleja, and Garcia "were the group of employees whose purpose was to organize employees in support of the" union, she found that they were not acting as union agents. As we explain later, the question therefore became

---

[3] Section 7 of the National Labor Relations Act provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . .." 29 U.S.C. § 157.

whether the activities of these employees, acting independently of the union, had made "a free election impossible," as the company had alleged in the alternative. On that score, the hearing officer found against the company.

The company filed exceptions to the hearing officer's report and to her rulings on the subpoenas, including her decision to defer ruling until the close of testimony.[4] With respect to the subpoenas, the company argued that its case "was severely restricted since it was not afforded the opportunity to obtain and review the documents and information responsive to the subpoena[s] in a timely manner and use them in its case in chief, in cross examination of the Union's witnesses, or in rebuttal." On appeal, the Board adopted the hearing officer's findings and recommendations and certified the union as the employees' collective-bargaining representative. *Ozark Auto. Distribs., Inc.*, Case 21-RC-21222 (Mar. 31, 2011), 2011 WL 1210976 (N.L.R.B.). Member Hayes dissented. In his view, the hearing officer "failed to apply the correct test in revoking the subpoenas" because she improperly focused only on the employees' confidentiality interests and did not consider the employer's countervailing interests. *Id.* at 2 n.2. (Member Hayes did not discuss other issues in the case.)

Unable to seek direct review of the Board's certification decision, *see Boire v. Greyhound Corp.*, 376 U.S. 473, 476–80 (1964), the company refused to provide information the union later requested in preparation for collective bargaining, and it refused to bargain with the union. The union filed an unfair labor practice charge against the company, and the Board's acting general counsel issued a complaint alleging that the

---

[4] Before the hearing officer issued her report, the company filed a request for "special permission" to appeal the hearing officer's rulings on the subpoenas. The Board's regional director denied the request.

company had violated § 8(a)(1) and § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), by refusing the union's requests to bargain and to furnish information. The company admitted its refusal to bargain and its refusal to furnish information to the union, but it challenged the validity of the union's certification, claiming that the hearing officer erred in revoking the subpoenas. *Ozark Auto. Distribs., Inc.*, 357 N.L.R.B. No. 88, at 1 & n.2 (Sept. 8, 2011). The Board noted that the representation issues the company raised were (or could have been) litigated in the prior representation proceeding and that the company had not presented any special circumstances requiring the Board to reexamine its decision to certify the union. *Id.* The Board therefore concluded that the company's refusal to bargain and to furnish requested information violated the Act. *Id.* at 2.

## II.

The company mounts several arguments against the Board's certification of the union. We address only the company's contention that the hearing officer's decision to quash the subpoenas, and the Board's approval of that decision, constituted error. The company's opening brief also argued that the error was prejudicial for the reasons we will discuss below.

In the hearing under § 9(c) of the Act, 29 U.S.C. § 159(c), the company's principal objection was that in the days leading up to the election, union supporters engaged in misconduct and that four employees—Castillo, Reyes, Castilleja, and Garcia—acted as agents of the union.[5]

---

[5] The company presented evidence that, among other things, the union supporters threatened other employees that if they did not vote for the union and the union nevertheless won the election, the union would not help them; that the union would get the company to fire the union non-supporters; and that "everyone should vote for the union

Board law draws a distinction between the actions of a union and its agents and the independent actions of company employees. *See Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 264–65 (D.C. Cir. 1998). When a union engages in misconduct and wins the election, the Board overturns the election if "an environment of tension and coercion" probably affected the outcome. *Id.* (internal quotation marks and citation omitted). But if the misconduct cannot be attributed to the union, the standard for setting aside an election is more difficult for the employer to meet. In that circumstance, the misconduct of employees, acting independently, must be "so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible." *Id.* at 265 (internal quotation marks and citation omitted).

For the company to lay employee misconduct at the union's feet, it did not have to prove that the union expressly authorized the employees' activities. *Id.* at 265. It would have been enough if the union supporters had "apparent authority" to act for the union. *Overnite Transportation* explained that there would be "apparent authority" when the union engaged in conduct that "'reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.' For there to be apparent authority, however, the third party must not only believe that the individual acts on behalf of the principal but, in addition, 'either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief.'" *Overnite Transp.*, 140 F.3d at 266 (quoting RESTATEMENT (SECOND) OF AGENCY § 27 & cmt. a (1992)). *See, e.g.*, *NLRB v. Kentucky Tennessee Clay Co.*, 295 F.3d 436, 443–45 (4th Cir. 2002); *Bio-Med. of Puerto Rico*, 269 N.L.R.B.

---

because if [they] did not [they] would all lose [their] jobs."

827, 828 (1984); *Local 3, Int'l Bhd. of Elect. Workers (Cablevision)*, 312 N.L.R.B. 487, 490–91 (1993).

The company's subpoenas sought information bearing on the question whether several of its employees who supported the union had actual or apparent authority to act on the union's behalf. The Board, "assuming the information sought in the Employer's subpoenas ha[d] some relevance to the Employer's case," upheld the hearing officer's decision to revoke the two subpoenas on the ground that there "ha[d] been no showing that the Employer's need for [the requested] information was paramount to the employees' confidentiality interests protected by [Section] 7 of the Act." *Ozark Auto. Distribs.*, Case 21-RC-21222, at 2 n.2., 2011 WL 1210976 (N.L.R.B.). In the absence of such a showing, the hearing officer "correctly protected the employees' interests in keeping confidential their communication with a union, an important aspect of the employees' 'engage[ment] in organizing.'" *Id.* (quoting *Nat'l Tel. Directory Corp.*, 319 N.L.R.B. 420, 420–21 (1995)) (alteration in original).

The Board's reasoning is flawed. As Member Hayes pointed out in dissent, the hearing officer never even attempted to balance those employee interests against the company's need for the documents. *Id.* And there is no indication in the record that the Board did so either.

Had the Board undertaken the task, it would have recognized that at least some of the document requests did not implicate any employee's confidentiality interests. The Castillo subpoena, for example, sought records of telephone calls between Castillo and the union, and between Castillo and other employees eligible to vote in the election. In its requests for this information, the company sought the date and time of each call, but not the content of the call. We cannot see how these

subpoenas would impinge on the privacy of employees so much so that the company's need for this information would be overwhelmed. The Board has generally sought to protect the identities of employees who attend union meetings "because of 'the potential chilling effect on union activity that could result from employer knowledge of the information.'" *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (quoting *Nat'l Tel. Directory Corp.*, 319 N.L.R.B. at 421). But here Castillo, whom the company alleged acted as a union agent, testified as a union witness. At the hearing, company counsel asked him—without objection—whether he had spoken with anyone at the union, or made or received any calls to or from the union, during the critical period before the election. If Castillo—who was represented by the union's lawyer—had no objection to such questions, surely he could not have had any legitimate objections to producing records of calls between him and the union. As for records of calls between Castillo and other employees, some employees testified that Castillo had threatened them. Those employees would have had no objection to their employers' receipt of records showing that Castillo had in fact called them.

We recognize that the Castillo subpoena requested records of calls between Castillo and *all* employees eligible to vote, not just those who testified that Castillo had threatened them. The subpoena also sought "any and all" documents relating to any phone calls between Castillo and the union and between Castillo and other employees. To the extent that such a request encompassed any "protected" information, the hearing officer should have first attempted to reconcile the employees' confidentiality interests with the company's need for the documents. There is nothing in the record to suggest that the hearing officer tried to do this. She did not require production of the documents for *in camera* review. And so she did not know what the documents would have shown. Yet the

company's need for the documents necessarily depended on what the documents would have tended to prove. Even if the hearing officer had a basis for concluding that the employees' confidentiality interests outweighed the company's need for some of the documents, the hearing officer could have narrowed the scope of the subpoena, rather than grant Castillo's petition to revoke the subpoena in its entirety. That is exactly what the Guide for Hearing Officers suggests. *See* OFFICE OF THE GEN. COUNSEL, NATIONAL LABOR RELATIONS BOARD GUIDE FOR HEARING OFFICERS IN REPRESENTATION AND SECTION 10(K) PROCEEDINGS 146 (Sept. 2003).[6] The Guide states that when confidentiality or other objections are raised to oppose a subpoena *duces tecum*, the hearing officer should consider receiving the material *in camera* and reviewing the documents to determine whether redacting certain information or narrowing the scope of the subpoena might cure the objection. *Id.* The hearing officer did not follow that course.

Establishing that several employees were acting as union agents was, as company counsel argued to the hearing officer, "critical" to the company's case. *See Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 731–34 (D.C. Cir. 1983) (Scalia, J.); *Ind. Hosp., Inc. v. NLRB*, 10 F.3d 151, 154–55 (3d Cir. 1993) (Alito, J.). For this reason, the hearing officer's failure to rule on the subpoenas until the close of the evidence exacerbated the prejudice. A ruling against the company, rendered before the hearing, could have alerted the company of the need to alter its presentation, to decide whether to call additional witnesses, to

---

[6] The Office of the General Counsel prepared the Guide "to provide procedural and operational guidance to the Agency's staff." NLRB GUIDE FOR HEARING OFFICERS preface. It "does not constitute rulings or directives of the Board or the General Counsel, and is not a form of authority binding on either the Board or General Counsel," although hearing officers are expected to follow the guidelines in the normal course. *Id.*

seek other documents from other sources, and to reformulate questions for cross-examination. All trial lawyers know the danger of the unknown. The Supreme Court has said as much: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Court wrote this about civil litigation in federal courts. What the Court said applies as well to evidentiary hearings before administrative bodies.

The Board argues that we should enforce its bargaining order even if it erred in quashing the subpoenas because the company failed to show that it suffered any prejudice. "In administrative law, as in federal civil and criminal litigation, there is a harmless error rule: § 706 of the Administrative Procedure Act, 5 U.S.C. § 706, instructs reviewing courts to take 'due account . . . of the rule of prejudicial error.'" *PDK Labs. Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (quoting 5 U.S.C. § 706) (ellipses in original);[7] *see also Shinseki v. Sanders*, 556 U.S. 396, 406 (2009); *Nat'l Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659–660 (2007) (quoting *PDK Labs.*, 362 F.3d at 799, when applying the rule of prejudicial error); *Canova v. NLRB*, 708 F.2d 1498, 1502–03 (9th Cir. 1983); *800 River Rd. Operating Co., LLC d/b/a Woodcrest Health Care Ctr. & 1199 SEIU, United Healthcare Workers E.*, 359 N.L.R.B. No. 48 (Jan. 9, 2013) (Board applying harmless error to hearing officer's revocation of a subpoena).

---

[7] Both the Supreme Court and this court have applied the APA to judicial review of Board decisions. *See, e.g.*, *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998); *W & M Props. of Conn., Inc v. NLRB*, 514 F.3d 1341, 1348 (D.C. Cir. 2008). *See generally E.I. Du Pont De Nemours & Co. v. NLRB*, 682 F.3d 65, 70 n.1 (D.C. Cir. 2012) (Randolph, J., concurring in part and concurring in the judgment) (collecting cases).

13

The extent of the Board's analysis consisted of an assertion that the company failed to demonstrate "a paramount need for the information" that overcame the "employees' interests in keeping confidential their communication with a union . . .." *Ozark Auto. Distribs., Inc.*, Case 21-RC-21222 (Mar. 31, 2011), 2011 WL 1210976 (N.L.R.B.). Of course the company could not have been sure what the subpoenas would have produced. *See Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir. 1984) ("There was an erroneous denial of discovery as the matter ultimately developed. Such a denial is ordinarily prejudicial. It is not possible to determine here whether the outcome would have been different had discovery been permitted."). The hearing officer did not conduct an *in camera* review of documents responsive to the subpoenas. As a result, the documents are not part of the administrative record available for judicial review.

Even so, there is some indication that the union and Castillo possessed documents within the terms of the subpoenas. The union did not object to some of the items specified in the company's subpoena. For requests one to three and seven to nine, their attorney, rather than objecting, responded that his client had no documents. *See* note 2 *supra*. This is an understandable strategy. Why provoke a controversy when nothing is at stake? But the strategy also gives rise to an inference—that the other documents requested in the two subpoenas, to which the union attorney (who also represented Castillo) interposed objections, did exist. That is, the union possessed records of conversations between the union and the alleged union agents Castillo, Reyes, Castilleja, and Garcia (and other records the subpoena described) and that Castillo had records of telephone calls between him and the union, and between him and company employees.

The Board may have entertained the same inference. The Board concluded that complying with the subpoenas would infringe on the employees' interest in keeping their communications with the union private. This conclusion assumes that the union and Castillo had responsive documents. If they had no documents, we cannot see how requiring compliance with the subpoenas could possibly have affected anyone's privacy interests.

The Board also indicated doubt about the relevance of the documents sought in the subpoenas.[8] After stating that the hearing officer considered "the subpoenas' irrelevance," the Board concluded that the company's contrary position had "no merit," to which the Board added: "Even assuming the information sought in the Employer's subpoenas has some relevance to the Employer's case, we find that there has been no showing that the Employer's need for any such information is paramount to the employees' confidentiality interests protected by Sec[tion] 7 of the Act." *Ozark Auto. Distribs., Inc.*, Case 21-RC-21222 (Mar. 31, 2011), 2011 WL 1210976 (N.L.R.B.). We do not share the Board's skepticism about the relevance of this material.

In unfair labor practice hearings, the Board follows the Federal Rules of Evidence "so far as practicable," 29 U.S.C. § 160(b); 29 C.F.R. § 102.39. In proceedings challenging election results, "rules of evidence prevailing in courts" are "not [ ] controlling." 29 C.F.R. § 102.66(a). Even so, we treat the Board's comment about relevancy as reflecting the widely accepted definition in the federal rules;[9] the Board offered no

---

[8] 29 U.S.C. § 161(1) permits the quashing of a subpoena on the ground of irrelevance.

[9] *See* 2 CLIFFORD S. FISHMAN & ANNE T. MCKENNA, JONES ON EVIDENCE, CIVIL AND CRIMINAL § 11:2 (7th ed. 2003).

other definition.[10] Relevant evidence, Rule 401 tells us, is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.[11] The "fact of consequence" was the status of Castillo, Reyes, Castilleja, and Garcia as union agents. The records of telephone calls among these employees and the union bore on that subject. The "amount of association between" the union and these employees was an important factor in determining whether their conduct during the election campaign should be attributed to the union. *PPG Indus., Inc. v. NLRB*, 671 F.2d 817, 822 n.8 (4th Cir. 1982);[12] *see NLRB v. Downtown Bid Servs. Corp.*, 682 F.3d 109, 115 (D.C. Cir. 2012).[13] The General Counsel's Guide for Hearing Officers

---

[10] The Guide for Hearing Officers instructs that "[e]vidence is relevant if it has a tendency to make more or less probable a fact of importance to the issue under consideration." NLRB GUIDE FOR HEARING OFFICERS at 33 (citing Fed. R. Evid. 401). The Board has stated that the "Federal Rules of Evidence provide[] significant guidance with respect to relevance." *Cooking Good Div. of Perdue Farms, Inc.*, 323 N.L.R.B. 345, 348 (1997).

[11] As quoted in the text, the Board assumed that the documents sought in the subpoenas may have had "some relevance." But under Rule 401 there are no degrees of relevancy. "Evidence is either relevant or it is not." *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993).

[12] Our court has expressed disagreement with a different aspect of the Fourth Circuit's reasoning in *PPG Industries*. *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. NLRB*, 736 F.2d 1559, 1565–66 (D.C. Cir. 1984); *but see id.* at 1571–72 (Bork, J., concurring).

[13] *Downtown Bid Services* held that when employees solicit authorization cards on a union's behalf they are acting as agents of the union "limited to their statements regarding 'purported union policies'

suggests that "[s]ubpoenaed information should be produced if it relates to any matter in question or if it can provide background information or lead to other evidence potentially relevant to the inquiry." NLRB GUIDE FOR HEARING OFFICERS at 21. The documents the company sought qualify on both counts: the documents relate to a matter in question—whether Castillo and other employees were agents of the union—and the documents may have provided leads to other relevant evidence.

There is more to be said about the information the subpoenas sought. The hearing officer found that employee Oscar Castillo, a self-described "front runner" for the union, gave untruthful testimony at the hearing. The company alleged that Castillo, while acting with apparent authority as a union agent, threatened and intimidated employees during the run up to the election. When he testified at the hearing, Castillo denied talking to anyone at the union, and he denied having any conversations with his fellow employees about the union. The hearing officer found his testimony not believable: "Overall, I discredit Castillo's testimony." But the hearing officer did not take the next logical step. That is, she did not find that with respect to Castillo's interaction with the union, the truth was the opposite of what he recounted under oath. *See United States v. Zeigler*, 994 F.2d 845, 848–51 (D.C. Cir. 1993). The documents the company sought in the subpoenas were relevant to that subject and Castillo's lack of candor lent support to the plausibility of the company's "version of the events." *See*

---

made in the course of soliciting." 682 F.3d at 113 (quoting *Davlan Eng'g*, 283 N.L.R.B. 803, 804 (1987)). In this case, the union's representative testified that company employees visited the union's office and picked up blank authorization cards. It is not clear which employees these were. The hearing officer found no evidence that Castillo, Reyes, Castilleja, or Garcia—the alleged union agents—signed authorization cards or solicited employees to sign the cards.

*Drukker Commc'ns*, 700 F.2d at 732. In comparable circumstances, then-Judge Scalia, writing for our court in *Drukker*, held that the Board's refusal to permit an employer to subpoena a witness in a proceeding challenging the validity of a representation election constituted prejudicial error. *Id.* at 731–34. "We therefore find that the Board's action must be set aside because it was taken without observance of procedure required by law, 5 U.S.C. § 706(2)(D) (1976)." *Id.* at 734.

As to "the rule of prejudicial error" under APA § 706, the company has the support not only of then-Judge Scalia's analysis in *Drukker*, but also then-Judge Alito's opinion for the court in *Indiana Hospital, Inc. v. NLRB*, 10 F.3d 151 (3d Cir. 1993), another case very much like this one. *Indiana Hospital* held that the Board's revocation of the hospital's subpoenas in a proceeding challenging a representation election was prejudicial error and warranted setting aside the election. The hospital contested the election on the ground that Board employees engaged in misconduct during the election campaign. To prove its allegation, one of the hospital's subpoenas sought documents reflecting telephone conversations between Board staff members and hospital employees. *Id.* at 152. The court held that the hearing officer's revocation of this subpoena *duces tecum* was prejudicial because the hospital could have used the documents in "at least three significant ways." *Id.* at 154. The hospital could have introduced the documents into evidence; it could have identified the employees the Board staff members had called; and it could have used the information in examining those employees.[14] *Id.* 154–55. *Cf. Joseph T. Ryerson & Son,*

---

[14] The subpoenaed documents in *Indiana Hospital* were not part of the administrative record. There, as here, petitioners faulted the hearing officer for not reviewing the documents before revoking the subpoenas. *See* Brief of Pet'r Indiana Hospital, *Indiana Hospital v. NLRB*, Nos. 93–3070, 93–3096, *available at* 1993 WL 13123443, at *6, 18–19 (3d Cir. 1993).

*Inc. v. NLRB*, 216 F.3d 1146, 1154 (D.C. Cir. 2000).  Each of these points applies to this case.

We add one further consideration: As experienced trial attorneys know, when a hostile witness realizes that examining counsel has information bearing on the answers to counsel's questions, the witness tends to be more candid.  Here, the company was deprived of this incentive for truthful and complete testimony.  In saying this we are of course assuming that the documents, if disclosed, would have supported the company's claim that company employees Castillo, Reyes, Castilleja, and Garcia were acting as union agents.  But it seems to us that *Drukker* and *Indiana Hospital* made the same sort of assumption when determining that the errors in those cases were prejudicial.  In *Drukker*, the court could not be sure what sort of testimony would have been given if the subpoena had issued.  And in *Indiana Hospital* the court could not be certain what the documents would have revealed if the subpoena had not been quashed.

Our opinion could end at this point, but we think it prudent to say a few words about *Shinseki v. Sanders*, 556 U.S. 396 (2009), even though neither the Board nor the company cited the case.  *Sanders* rejected the Federal Circuit's application of the rule of prejudicial error in reviewing decisions of Court of Appeals for Veterans Claims.  "In our view," the Court wrote, "the Federal Circuit's 'harmless-error' framework is too complex and rigid [and] its presumptions impose unreasonable evidentiary burdens upon the VA."  *Id.* at 399.  "[N]ormally," the Court held, "the burden of showing that an error is harmful [ ] falls on the party attacking the agency's determination."  *Id.* at 409.  The factors that should "inform a reviewing court's 'harmless-error' determination are various" and "case-specific."  *Id.* at 411.

19

Our decision in this case is consistent with *Sanders*. We are not imposing any "rigid" formula for determining harmless error. The factors we have considered are "case-specific." And we have not imposed on the company "an evidentiary 'barrier so high that it could never be surmounted.'" *Id.* at 408 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *see also McLouth Steel Products, Co. v. Thomas*, 838 F.2d 1317, 1323–25 (D.C. Cir. 1988).

The Court in *Sanders* and in *Neder* relied heavily on ROGER J. TRAYNOR, THE RIDDLE OF HARMLESS ERROR (1970), the classic exposition of harmless error by the former Chief Justice of the California Supreme Court. *Sanders*, 556 U.S. at 408, 409, 412; *Neder*, 527 U.S. at 18, 19; *see also O'Neal v. McAninch*, 513 U.S. 432, 437, 442 (1995); *Delaware v. Van Ardsdall*, 475 U.S. 673, 681, 687 (1986).

We shall do the same and end with this passage from Chief Justice Traynor's monograph: "There are sometimes errors at a trial that deprive a litigant of the opportunity to present his version of the case. These are also ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment. When, for example, an appellant has been deprived of the opportunity to summon witnesses, the appellate court can hardly determine what testimony would have materialized but for the error. No subjunctives can fill the void in a very present record." TRAYNOR, THE RIDDLE OF HARMLESS ERROR 68.

The petition for judicial review is granted, the Board's cross-petition for enforcement is denied, the Board's order is vacated, and the case is remanded to the Board.

*So ordered.*

## ADDENDUM

The subpoena served on the union requested the following documents:

**Request No. 1:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Robert Castilleja regarding Robert Castilleja serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 2:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Manuel Reyes regarding Manuel Reyes serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 3:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Oscar Castillo regarding Oscar Casillo serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 4:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Oscar Castillo.

**Request No. 5:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Manuel Reyes.

**Request No. 6:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Robert Castilleja.

**Request No. 7:** Any and all DOCUMENTS that RELATE to Oscar Castillo serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 8:** Any and all DOCUMENTS that RELATE to Manuel Reyes serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 9:** Any and all DOCUMENTS that RELATE to Robert Castilleja serving, acting or functioning as an agent, official, representative or steward of the Union.

**Request No. 10:** Any and all DOCUMENTS that RELATE to O'Reilly from May 1, 2010 through August 13, 2010.

**Request No. 11:** Any and all DOCUMENTS that RELATE to any COMMUNICATION regarding O'Reilly from May 1, 2010 through August 13, 2010.

**Request No. 12:** Any and all DOCUMENTS that RELATE to any COMMUNICATION from Local 166 to the employees who work at O'Reilly's facility located at 24520 San Michele Road, Moreno Valley, California from May 1, 2010 through August 13, 2010.

**Request No. 13:** Any and all DOCUMENTS from May 1, 2010 through August 13, 2010 that RELATE to any COMMUNICATION from Local 166 to the O'Reilly's employees eligible to vote in the Election.

**Request No. 14:** Any and all DOCUMENTS from May 1, 2010 through August 13, 2010 regarding O'Reilly's employees eligible to vote in the Election.

**Request No. 15:** Any and all DOCUMENTS from May 1, 2010 through August 13, 2010 that RELATE to any COMMUNICATION between the Union and Santiago Albarran.

**Request No. 16:** Any and all DOCUMENTS that RELATE to any [COMMUNICATION] between the Union and Efrain Vasquez from May 1, 2010 through August 13, 2010.

**Request No. 17:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Javier Soto from May 1, 2010 through August 13, 2010.

**Request No. 18:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Mario Macchione from May 1, 2010 through August 13, 2010.

**Request No. 19:** Any and all DOCUMENTS that RELATE to any COMMUNICATION between the Union and Louis (Greg) Morrison from May 1, 2010 through August 13, 2010.

**Request No. 20:** Any and all DOCUMENTS that RELATE to any COMMUNICATION from May 1, 2010 through August 13, 2010 by Oscar Castillo, Manuel Reyes and/or Robert Castilleja to any employees eligible to vote in the Election.

**Request No. 21:** Any and all DOCUMENTS that RELATE to any COMMUNICATION from May 1, 2010 through August 13, 2010 by Ruben Luna to any employees eligible to vote in the Election.

**Request No. 22:** Any and all DOCUMENTS from May 1, 2010 through August 13, 2010 that RELATE to Ruben Luna and any employees eligible to vote in the Election.

**Request No. 23:** Any and all DOCUMENTS from May 1, 2010 through August 13, 2010 that RELATE to Oscar Castillo, Manuel Reyes and/or Robert Castilleja.

**Request No. 24:** Any and all DOCUMENTS that RELATE to any meetings from May 1, 2010 through August 13, 2010 held by the Union and any O'Reilly employees eligible to vote in the Election.

**Request No. 25:** Any and all DOCUMENTS that RELATE to any COMMUNICATIONS at any meetings from May 1, 2010 through August 13, 2010 held by the Union and any O'Reilly employees eligible to vote in the Election.

The subpoena served on Oscar Castillo requested the following documents:

**Request No. 1:** Any and all DOCUMENTS, including cellular or telephone records (including the time, date and phone number called), RELATING to any telephone calls made by YOU to the UNION from May 1, 2010 through August 13, 2010.

**Request No. 2:** Any and all DOCUMENTS, including cellular or telephone records (including the time, date and phone number called), RELATING to any telephone calls received by you from the UNION from May 1, 2010 through August 13, 2010.

**Request No. 3:** Any and all DOCUMENTS, including cellular and telephone records (including the time, date and phone number called), showing calls made to O'REILLY employees or received from O'REILLY employees eligible to vote in the ELECTION for the time period of May 1, 2010 through August 13, 2010.