RANDOLPH, Senior Circuit Judge,
dissenting:
Far more is at stake here than matters of civil procedure and administrative law.
Of utmost importance is that on the eve of a Presidential election, and elections for federal office, a court has issued an injunction forbidding Kansas, Georgia and Alabama from enforcing their election laws, laws requiring those who seek to register to vote to prove that they are citizens of this country.
That order is unconstitutional.
Under Article I, § 2, cl. 1, of the Constitution and the Seventeenth Amendment, it is the States, and the States alone, who have the authority and the power to determine the eligibility of those who wish to vote in federal elections. There is no claim in this case that the laws of these three States violate the Fourteenth Amendment or any other constitutional provision. And so neither the Congress nor the President nor any federal commission and, most certainly, not two federal judges sitting in Washington, D.C. (or even eight or nine) have the authority to prevent Kansas, Georgia and Alabama from enforcing their laws in the upcoming federal elections.
I would not have reached the constitutional issue the majority’s order now poses. In my view the appeal should have been disposed on the ground that the League of Women Voters and their allies have not even come close to demonstrating the type of harm entitling them to an order suspending these state laws.
My reasons for disposing of this appeal on non-constitutional grounds are, briefly stated, as follows.
First, put aside the only two individual plaintiffs who claimed they were citizens but could not prove it. They have now registered to vote in federal elections. Their fundamental right to vote is not at issue in this case. The only proper plaintiffs before us are the League of Women Voters and the other, similar organizations. What is their irreparable injury? The States’ proof-of-citizenship laws, as reflected on the Federal Form, do not prevent these plaintiffs from conducting voter registration drives. The success of their efforts may be affected, but the proof-of-citizenship requirement does not restrict their ability to engage in political activity by encouraging others to vote. To the extent these plaintiffs may have to spend more time and money in their registration drives, that does not entitle them to a preliminary injunction. “Mere injuries,” our court has held, “in terms of money, time and energy necessarily expended in the absence of a stay are not enough.” Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297-98 (D.C. Cir. 2006) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).
As to plaintiffs’ probability of success on the merits, the majority opinion holds that the federal Election Assistance Commission’s Executive Director abused his dis *16 cretion in ■■ changing ■ the' Federal Form upon the States’ requests.
■That holding raises the “serious constitutional” issue I mentioned above, an issue the Supreme Court—in its words—was “[hjappily” “spared” from having to decide in Arizona v. Inter Tribal Council of Arizona, Inc., — U.S. -, 133 S.Ct. 2247, 2258, 2259, 186 L.Ed.2d 239 (2013). The Supreme Court did not have to decide whether the EAC was “under a nondiscre-tionary duty to include Arizona’s” proof-of-citizenship requirement on the Federal Form because Arizona had never requested the EAC to do so. Id. at 2260.
Justice Thomas would have decided the constitutional issue the Supreme Court majority managed to avoid and Justice Alito would have construed the governing statute to allow the States to require any information they deemed necessary. Justice Thomas determined that the “text and history” of Article I, § 2, cl. 1, of the Constitution and the Seventeenth Amendment “confirm that States have the exclusive authority to set voter qualifications and to determine whether those qualifications are satisfied.” 133 S.Ct. at 2265 (Thomas, J., dissenting). It follows that when a State requests updated registration requirements to the Federal Form, “the federal government does not have the constitutional authority to withhold such approval.” Id. at 2270. The Supreme Court majority did not express any disagreement with Justice Thomas’s analysis. For the reasons Justice Thomas stated, Justice Ali-to would have held that the National Voter Registration Act must be read to allow the States to “decide for themselves what information ‘is necessary ... to assess the eligibility of the applicant’—both by designing- their own forms and by requiring that federal form applicants provide supplemental information when appropriate. [42 U.S.C.] § 1973gg-7(b)(l).” 133 S.Ct. at 2274-J75 (Alito, J., dissenting).
Based on this constitutional analysis, the Executive Director properly granted the requests of Kansas, Georgia and Alabama. He did not inquire into the wisdom of the States’ laws, but instead relied on the “simple fact” that “registration is not complete without this information.” Because the EAC was under a nondiscretionary, constitutional duty to grant the States’ requests, it is of no moment how well the Executive Director explained his actions or whether he had the authority to act or whether the Commission itself should have directed the changes to the Federal Form. If those were errors, they were clearly harmless under the Administrative Procedure Act, 5 U.S.C. § 706. See, e.g., Ozark Auto. Distributors, Inc. v. Nat’l Labor Relations Bd., 779 F.3d 576, 582 (D.C, Cir. 2015).