# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 10, 2012      Decided November 2, 2012

No. 11-1198

SAN MIGUEL HOSPITAL CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 11-1209, 11-1319, 11-1349

———

On Petitions for Review and Cross-Applications for
Enforcement
of Orders of the National Labor Relations Board

———

*Kaitlin Kaseta* argued the cause for petitioner. On the briefs
were *Don T. Carmody* and *Bryan T. Carmody*.

*Kellie Isbell*, Attorney, National Labor Relations Board,
argued the cause for respondent. With her on the brief were
*John H. Ferguson*, Associate General Counsel, *Linda Dreeben*,
Deputy Associate General Counsel, and *Julie B. Broido*,
Supervisory Attorney.

Before: BROWN, *Circuit Judge*, EDWARDS and SILBERMAN,
*Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioner, San Miguel Hospital Corp., essentially is challenging the Board's determination that a "wall to wall" bargaining unit of the Hospital's professional and non-professional employees is appropriate. Although Petitioner unleashes a blizzard of separate arguments, both substantive and procedural, only one — relating to the burden of proof — even gives us pause. We deny the petitions and grant the Board's cross-applications for enforcement.

## I.

The Hospital is an acute-care facility in Las Vegas, New Mexico. About five years ago the National Union of Hospital and Healthcare Employees District 1199 NM petitioned for an election in a unit combining all on-site professional and non-professional employees (excluding, of course, guards).[1] The Hospital objected to the unit, contending that certain nurses were statutory supervisors (no longer an issue) and, more importantly, that the Board's Health Care Rule, which sets forth the appropriate units in the health care industry, was illegal because it violated Section 9(c)(5) of the National Labor Relations Act. This provision prohibits the Board from using "the extent to which the employees have organized" as the "controlling" factor in unit determination. 29 U.S.C. § 159(c)(5). The Health Care Rule states:

---

[1] The National Labor Relations Act precludes guards from being represented in the same bargaining unit as other employees. 29 U.S.C. § 159(b)(3).

Except in extraordinary circumstances and in circumstances in which there are existing non-conforming units, the following shall be appropriate units, and the only appropriate units, . . . except that, if sought by labor organizations, various combinations of units may also be appropriate:

(1) All registered nurses.
(2) All physicians.
(3) All professionals except for registered nurses and physicians.
(4) All technical employees.
(5) All skilled maintenance employees.
(6) All business office clerical employees.
(7) All guards.
(8) All nonprofessional employees except for technical employees, skilled maintenance employees, business office clerical employees, and guards.

29 C.F.R. § 103.30(a).

Petitioner also claimed that the Board violated the Rule itself by combining professionals and non-professionals together in the absence of a showing of "extraordinary circumstances." Although the regional director was obliged to (and did) hold a separate *Sonotone* election[2] among the professionals to determine whether they wished to be part of the wall-to-wall

---

[2] "*Sonotone* election" refers to the kind of election that determines whether professionals will be included in a collective-bargaining unit with non-professionals pursuant to 29 U.S.C. § 159(b)(1). *See generally Sonotone Corp.*, 90 N.L.R.B. 1236, 1240-42 (NLRB 1950).

unit, petitioner contended that was insufficient. The Board's Regional Director nevertheless found the proposed units appropriate and directed a secret-ballot election to be conducted in the two voting groups on whether they desired Union representation. The Hospital requested Board review of the Regional Director's Decision and Direction of Election, but the Board denied this request.

The Board's Regional Office conducted the election in June 2007, and the Union prevailed. The professionals voted 48 to 19 to be included in the unit with the nonprofessionals, and the two groups together voted 121 to 73 for union representation. The Hospital filed 24 objections to the election, but the hearing officer recommended that all the objections be overruled. A two-member panel of the Board then adopted all of the hearing officer's findings and recommendations and certified the Union as the exclusive collective-bargaining representative of the Hospital's employees.

The Hospital, however, refused to bargain with the Union. The Board's General Counsel accordingly issued a complaint against the Hospital, alleging violations of Sections 8(a)(1) and (5) of the Act. Petitioner's defense was only that the Union was improperly certified in light of the Hospital's objections to the election. The same two-member Board eventually issued an order holding that the Hospital's refusal to bargain violated the Act. The Hospital petitioned for review in this Court, and the Board cross-applied for enforcement.

Before we had a chance to resolve this dispute, the Supreme Court decided *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635, 2638 (2010), which held that a delegee group of at least three Board members was necessary to exercise the delegated authority of the Board; in other words, two-member Board

decisions were invalid. Accordingly, we vacated the Board's two-member decisions and remanded for reconsideration. The Board, now with three members, responded with two subsequent decisions. The first certified the election results, once again overruling all of petitioner's objections, and issued a notice to show cause on the refusal-to-bargain issue (the "Certification Order"). The second, decided several months later, granted the General Counsel's motion for summary judgment and found that the Hospital had unlawfully refused to bargain with the Union (the "Refusal-to-Bargain Order").

The Hospital timely petitioned for review of the Board's Refusal-to-Bargain Order, and the Board has cross-applied for enforcement.[3]

II.

Despite all of petitioner's legal maneuvering, the only real question before us is the validity of the Board's certification of the Union. The Hospital does not deny that it has never bargained with the Union, so if the certification was valid, it follows apodictically that the Hospital's refusal to bargain violated Sections 8(a)(1) and (5) of the Act.

---

[3] Also before us is a separate Board decision finding that petitioner committed various unfair labor practices related to a unilateral change in policy and failure to provide information to the Union. The parties have taken to calling the Refusal-to-Bargain Order mentioned above "*San Miguel I*" and this separate unfair-labor-practice proceeding "*San Miguel II.*" Both parties agree, however, that *San Miguel II* turns entirely on whether the Union was the properly certified bargaining representative for the Hospital's employees. Because we find that it was, we grant the Board's cross-application for enforcement in both cases.

A.   The Health Care Rule

The Board rarely uses its rulemaking authority, but the Health Care Rule is a welcome deviation from this trend.  Its promulgation in 1989 was a notable event in which the Board responded to differing positions taken by the Board and courts of appeals.  *See generally St. Margaret Mem'l Hosp. v. NLRB*, 991 F.2d 1146, 1148 (3d Cir. 1993).  As we noted above, the Board announced eight possible appropriate units, but indicated that combinations might be appropriate if sought by a labor organization.  That occurred here.  The union successfully sought to combine six of the groups, excluding only guards and physicians.

The Health Care Rule was upheld by the Supreme Court in *American Hospital Ass'n v. NLRB*, 499 U.S. 606 (1991), against various challenges.  But petitioner brings a somewhat different challenge which (perhaps understandably) was not thought of before — that the Rule violates Section 9(c)(5) of the Act because it endorses the extent of a union's organization as the controlling factor in unit determination.  It is not immediately apparent to us why the validity of the Rule is a necessary pre-condition to the Board's determination in this case.  There is no reason to think that a broad unit, in the absence of the Rule, would somehow be inappropriate.  *See Vanderbilt Univ.*, 218 N.L.R.B. 1076, 1078 (NLRB 1975) (noting the "strong congressional sentiment favoring broad unit determinations in the health care industry"); *see also Cleveland Constr., Inc. v. NLRB*, 44 F.3d 1010, 1013 (D.C. Cir. 1995) ("The Board need only select *an* appropriate unit, not the *most* appropriate unit." (emphasis added)).

But assuming *arguendo* the Rule's validity is necessarily at issue, we see zero merit to petitioner's argument.  All the

Hospital points to are a few passages from the Rule's administrative record indicating that unions had routinely requested or organized these units. Yet the administrative record of the rulemaking also makes quite clear that the factors the Board considered in deciding upon the eight listed units included "uniqueness of function; training, education and licensing; wages, hours and working conditions; supervision; employee interaction; and factors relating to collective bargaining." Second Notice of Proposed Rulemaking for Collective-Bargaining Units in the Health Care Industry, 53 Fed. Reg. 33,900, 33,905-06 (Sept. 1, 1988) ("*Second Notice*").

Indeed, even if the Board did consider past and present union organization in formulating the Health Care Rule, nothing in the National Labor Relations Act precludes such consideration entirely. Section 9(c)(5) requires only that the extent of organization not be the *controlling* factor; consideration of that factor among others is entirely lawful. NLRB v. *Metro. Life Ins. Co.*, 380 U.S. 438, 441-42 (1965); *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1191 (D.C. Cir. 2000).

To be sure, if a union petitions for an election in one of the eight acceptable units, it will likely be granted, but that hardly suggests that extent of organization is a controlling factor because the Board has indicated that other considerations support the appropriateness of any of these eight units. Moreover, a protesting employer may always seek to show "extraordinary circumstances," requiring a departure from the Rule's advance determination of appropriate units.[4]

---

[4] Petitioner also claims that the Rule was undercut by a subsequent Board decision, *Specialty Healthcare & Rehabilitation*

B.  Appropriateness of the Unit

Assuming the validity of the Rule, the Hospital maintains that the Board violated it in this proceeding because the Union was required to show and the Board was required to find extraordinary circumstances to join together a number of the Rule's designated units, particularly the professionals with the non-professionals.   According to petitioner, even if the professionals voted to be part of the overall unit, that by itself did not excuse the Board's failure to find extraordinary circumstances. This argument is based on an obvious misreading of the Rule. Recall it states, "Except in extraordinary circumstances and in circumstances in which there are existing non-conforming units, the following shall be appropriate units, and the only appropriate units, . . . *except that, if sought by labor organizations, various combinations of units may also be appropriate*." 29 C.F.R. § 103.30(a) (emphasis added).  It is quite clear then that combinations and extraordinary circumstances are *different* exceptions, and that a combination of the designated units can be deemed appropriate without a showing of extraordinary circumstances.

The Hospital's fall-back argument — which did, at first reading, seem more troublesome — is that even if the units "may" be combined under the Rule, that does not mean they shall be combined without the normal showing of a shared community of interest.  *See NLRB v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985); *see also United Operations, Inc.*, 338 N.L.R.B.

*Center of Mobile*, 357 N.L.R.B. No. 83 (NLRB 2011), but that opinion dealt with *non*-acute care facilities like nursing homes, which are not governed by the Health Care Rule.  Nothing in *Specialty Healthcare* affects the analysis for acute-care facilities.

123, 123 (NLRB 2002) (listing the factors considered in a standard community-of-interest analysis). The Hospital points out that the Board's commentary on the final proposed Rule indicated that it was abandoning a position expressed in the initial notice of proposed rulemaking — that all combinations *shall* be appropriate. *See Second Notice*, 53 Fed. Reg. at 33,932 ("[W]e believe that we have insufficient evidence at this time to say that, per se, all combinations will be found appropriate. We believe this is a matter we will have to decide in the course of individual cases, by adjudication."). That indicates, according to petitioner, that the Board recognized that combined units could well be objectionable if they transgressed the reigning community-of-interest standard. That seems correct to us. We further recognize that community of interest is a factual question which the Board bears the burden of establishing on appeal.[5]

But the flaw in this argument is that the Hospital never put the issue in play; it never challenged the combined unit's community of interest at the initial representation hearing. The Hospital disputed the status of several nurses and presented its arguments relating to the legality and interpretation of the Rule, but despite invitation by both the hearing officer and the Union's counsel, it never questioned community of interest (probably because the argument was an obvious loser). A number of

---

[5] The APA states that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof," 5 U.S.C. § 556(d), and the Supreme Court has clarified that "burden of proof" here means burden of *persuasion*, not just burden of *production*. *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 276 (1994). Of course, even if the Board has the burden before us as the proponent of its own order, our *review* of its unit determination is highly deferential. *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 2000).

subordinate questions are often litigated in representation cases — such as personnel practices, supervision, common tasks, working interrelationship, etc. — that together point to a community of interest or the lack thereof. But it is hardly to be expected that a hearing officer would engage in a self-directed inquiry into the myriad of such questions in the absence of an employer's claim that a proposed unit lacked a community of interest.

Interestingly, there is no Board (or court) decision cited by the Board's counsel, nor one that we could find, that addresses this precise point. Theoretically, we suppose under *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), we could remand to the Board to explicitly address this issue. But in this unusual instance we will not, because we think the proposition — that the employer must challenge a proposed unit on community-of-interest grounds before the Board is required to rule on the issue — is so painfully obvious that a remand is unnecessary. We therefore conclude that the Hospital waived any subsequent challenge based on the supposed lack of community interest by not raising it before the hearing officer.

C.   Procedural Challenges to the Certification

Petitioner raises three procedural objections to the Board's underlying proceedings, but all are marked more by imagination than substance. First, the Hospital makes the extraordinary claim that the Board's Certification Order was unlawful because it was issued only four business days after our order vacating and remanding in light of *New Process Steel*. It is argued that, given the complexity of the case, the Board must have either *de facto* reopened the case prior to remand or else given only superficial consideration to the Hospital's arguments.

To dispose of this rather silly argument, it is hardly necessary to rely on the presumption of regularity that agency proceedings enjoy. *See Hercules, Inc. v. EPA*, 598 F.2d 91, 123 (D.C. Cir. 1978). Suffice it to say that nothing prevented the Board from merely *thinking* about cases affected by the Supreme Court's decision in *New Process Steel* before actual remand orders were issued. *See NLRB v. KSM Indus., Inc.*, 682 F.3d 537, 544 (7th Cir. 2012) (finding unproblematic even a one-day turnround for a Board decision because "[t]he pendency of *New Process Steel* was hardly a secret, and for all we know the Board was already busy taking another look at the cases that were potentially affected by it").

Second — and this one is also a doozy — petitioner claims that the Certification Order was improper because three Representation-Management ("RM") Petitions were pending at the time it was issued. But the RM petitions were obviously a gimmick that the Board could properly ignore in determining whether to certify the election. RM petitions (election petitions filed by an employer) are permitted only when an employer claims a union no longer has majority support, or in response to a union's demand for recognition. *See* 29 U.S.C. § 159(c); NLRB Casehandling Manual, Part Two, Representation Proceedings, Sec. 11002.1(a), 11002.2(b).[6] But a post-election assertion that a union has lost majority support has no bearing on the validity of an election that has already occurred. *See,*

---

[6] For a one-year period after a union's election victory is certified, the union is presumed to enjoy majority support, and an employer may not challenge this status by refusing to bargain. *See Brooks v. NLRB*, 348 U.S. 96, 98-104 (1954). But the RM petitions here were filed three days *before* the Board's pending Certification Order, obviously to circumvent this one-year safe-harbor period.

*e.g.*, *Sunbeam Corp.*, 89 N.L.R.B. 469, 473 (NLRB 1950). The only issue before the Board in the Certification Order was whether to certify the Union's victory in the original election, so the pending RM petitions did nothing to render this order unlawful.[7]

---

[7] The Board suggests that we should not even consider these first two procedural arguments because the Hospital failed to timely raise them before the agency. Ordinarily, of course, we lack jurisdiction to hear arguments not raised before the Board in the first instance. 29 U.S.C. § 160(e); *N.Y. & Presbyterian Hosp. v. NLRB*, 649 F.3d 723, 733 (D.C. Cir. 2011). But there is no dispute here that the Hospital *did* make these arguments in the refusal-to-bargain proceedings — indeed, the Board specifically considered and rejected both of them in the Refusal-to-Bargain Order directly before us. The only question is whether the Hospital needed to raise them earlier.

Both of petitioner's first two challenges pertain to the *timing* of the Certification Order — the Hospital says it was issued too quickly, and improperly issued in light of the pending RM petitions. So petitioner could not plausibly have raised these concerns until *after* the Certification Order was handed down. The Board counters that the Hospital could have filed a motion for reconsideration pursuant to 29 C.F.R. § 102.48(d) — thereby challenging the Certification Order immediately — and that foregoing this option and waiting until the refusal-to-bargain proceedings waived the arguments. But the Board ignores Rule 102.48(d)(3), which expressly states that "[a] motion for reconsideration or for rehearing need not be filed to exhaust administrative remedies." *See also Roundy's Inc. v. NLRB*, 674 F.3d 638, 646 n.2 (7th Cir. 2012) (noting that the Rule 102.48(d) procedures are not mandatory); *NLRB v. Mercy Hosps. of Sacramento, Inc.*, 589 F.2d 968, 973-74 (9th Cir. 1978) (same). We therefore decide these arguments on the merits, however spurious they may be.

Lastly, petitioner claims that the Board abused its discretion by permitting the General Counsel to amend the complaint — to allege that petitioner had again refused the Union's bargaining demand — after the "deadline" for such amendments announced in the Certification Order had passed. What this argument has to do with "the price of tea" is not apparent. Petitioner has never denied its refusal to bargain with the Union, so the amendment to the complaint was of no real significance, and certainly no prejudice to the Hospital. At the very least, it surely was not an abuse of discretion for the Board to allow a late amendment that did no more than reflect the undisputed facts at the time.

\*  \*  \*

As we noted at the outset, the Hospital unleashed a blizzard of arguments to challenge the Board's unfair-labor-practice orders. It might be appropriate to suggest that in appellate argument, the proverbial rifle is preferable to a machine gun — but that would assume petitioner had at least a few good arguments; it did not. In truth, it appears to us that all the Hospital sought was the inevitable delay that review of Board orders affords. This is regrettable.

Accordingly, the petitions for review are denied, and the Board's cross-applications for enforcement are granted.

*So ordered.*