# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 5, 2016          Decided August 16, 2016

No. 15-1050

RUSH UNIVERSITY MEDICAL CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 743,
INTERVENOR

———

Consolidated with 15-1097

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Kenneth F. Sparks* argued the cause for petitioner. With him on the briefs was *Mark L. Stolzenburg*.

*Jacqueline M. Holmes* and *Jeffrey G. Micklos* were on the brief for *amici curiae* American Hospital Association and the Federation of American Hospitals in support of petitioner.

*Elizabeth A. Heaney*, Supervisory Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Richard F. Griffin*, *Jr*., General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Elliott Becker*, Attorney.

*James B. Coppess* argued the cause for intervenor. With him on the brief was *Joel A. D'Alba*. *Gary S. Witlen* entered an appearance.

Before: GRIFFITH, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: In 1989, the National Labor Relations Board promulgated a rule aimed to address concerns about the undue proliferation of collective bargaining units in health care facilities. Excessive fragmentation of bargaining units was viewed to increase the potential for labor unrest, which could be particularly harmful to the public in the health care setting. The resulting rule, known as the Health Care Rule, established eight standardized bargaining units for acute-care hospitals. The list of standardized units includes, for instance, registered nurses, skilled maintenance employees, and guards. On a prospective basis, the Rule deems the eight enumerated units to be the only appropriate bargaining units in acute-care hospitals.

This case concerns the application of the Health Care Rule on a retrospective basis—in particular, to preexisting bargaining units that did not conform to the eight standardized units set forth in the Rule. The Rule calls for the Board to address preexisting nonconforming units through case-by-

case adjudication. But the Rule prescribes that, if there is a petition to represent an additional unit in a hospital with preexisting nonconforming units, the Board may find the additional unit appropriate only if it comports, to the extent practicable, with one of the eight standardized units.

The Board understands that aspect of the Rule to apply as follows: in any representation election that would create a new bargaining unit, the new unit must include all unrepresented employees who would be grouped together in one of the Rule's standardized units. So, for instance, if the new bargaining unit would include any unrepresented registered nurses, the new unit must include *all* unrepresented registered nurses, not just some of them. That approach tends to minimize the number of employees who would be left unrepresented, thereby limiting the potential for further proliferation of bargaining units in the future.

The question in this case is whether the same understanding of the Rule governs in the case of an election to add unrepresented employees to a preexisting bargaining unit, as opposed to an election to create a new bargaining unit. In other words, when a union seeks to add unrepresented employees to a preexisting nonconforming unit, must the unit embrace all (and not just some) of the unrepresented employees who would fit within the same standardized unit in the Rule? The Board's answer is no. The Board reasons that the addition of employees to an already existing unit—unlike the creation of a new unit—necessarily keeps the number of bargaining units constant. It therefore does not implicate the core concern of the Rule, i.e., proliferation of additional bargaining units.

The petitioner in this case, an acute-care facility, argues that the Board's distinction between preexisting units and new

4

units under the Rule is arbitrary and incompatible with the Board's own precedent. We disagree. We therefore uphold the Board's understanding that the Rule is inapplicable in the context of elections to add employees to a preexisting unit.

I.

A.

Although established in 1935, the National Labor Relations Board's first major foray into formal rulemaking did not come until its promulgation of the Health Care Rule more than five decades later, in 1989. *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 608 (1991); *San Miguel Hosp. Corp. v. NLRB*, 697 F.3d 1181, 1184 (D.C. Cir. 2012). As relevant here, the Rule addressed Congress's concerns about undue proliferation of bargaining units in health care facilities. *See Am. Hosp. Ass'n*, 499 U.S. at 615-17; S. Rep. No. 93-766 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 3946, 3950; Collective-Bargaining Units in the Health Care Industry, 54 Fed. Reg. 16,336-01, 16,345-46 (Apr. 21, 1989) (to be codified at 29 C.F.R. pt. 103). An excessive number of bargaining units increases the prospect of jurisdictional disputes and work stoppages, potentially impairing the provision of health care services to the public. *See* Collective-Bargaining Units in the Health Care Industry, 53 Fed. Reg. 33900-01, 33906 (Sept. 1, 1988); *Am. Hosp. Ass'n*, 499 U.S. at 615.

In response, the Health Care Rule established the following eight standardized bargaining units for acute-care hospitals: registered nurses, physicians, professionals other than registered nurses and physicians, technical employees, skilled maintenance employees, business office clerical employees, guards, and all other nonprofessional employees.

29 C.F.R. § 103.30(a); *San Miguel Hosp. Corp.*, 697 F.3d at 1183. Under the Rule, the collective bargaining units in an acute-care hospital can consist of those eight—and only those eight—units. *Am. Hosp. Ass'n*, 499 U.S. at 608.

The Rule, however, included an exception from that mandate for nonconforming units already in existence at the time of the Rule's promulgation. *See* 29 C.F.R. § 103.30(a). Preexisting nonconforming units were left for the Board to address on a case-by-case basis through adjudication. *See id.* § 103.30(b). In undertaking those adjudications, the governing regulations cabin the Board's discretion in one respect of relevance here: when "there are existing non-conforming units . . . and a petition for additional units is filed . . . the Board shall find appropriate only units which comport, insofar as practicable, with the appropriate unit" from the eight standardized units. *Id.* § 103.30(c).

In adjudications construing that language, the Board has explained that, "[b]y its terms, Section 103.30(c) applies only to petitions for 'additional units,' that is, petitions to represent a new unit of previously unrepresented employees, which would be an addition to the existing units at a facility." *Kaiser Found. Hosps.*, 312 NLRB 933, 934 (1993); *accord Crittenton Hosp.*, 328 NLRB 879, 880 (1999). And when a union brings a petition to represent such a new unit of previously unrepresented employees (who are referred to as "residual employees"), the Board has further determined that the additional unit must include *all* residual employees who would fit within the same standardized unit under the Rule. *See St. Mary's Duluth Clinic Health Sys.*, 332 NLRB 1419, 1420-22 (2000).

As an example, the Board applied that understanding of Section 103.30(c) in a situation in which there was a

preexisting nonconforming bargaining unit that included some of the facility's skilled maintenance employees (which, as noted, is one of the eight standardized categories of employees). The Board explained that, if a union sought to represent a new unit that would include unrepresented skilled maintenance workers, the union could not "represent yet another separate, residual unit that included only a *portion* of the remaining unrepresented skilled maintenance employees," but would be "required to include *all* unrepresented employees residual to the existing unit of skilled maintenance employees." *St. Vincent Charity Med. Ctr.*, 357 NLRB 854, 856 (2011) (emphases added).

The Board does not apply the same understanding, however, if a union seeks to add residual employees to an already existing unit rather than to create a new unit. The mechanism by which a union adds employees to an existing unit is known as an *Armour-Globe*, or self-determination, election. *See generally Armour & Co.*, 40 NLRB 1333 (1942); *Globe Mach. & Stamping Co.*, 3 NLRB 294 (1937). In its decision in *St. Vincent*, the Board exempted *Armour-Globe* elections from Section 103.30(c) in particular and from the Health Care Rule more generally.

The Board explained that an "*Armour-Globe* self-determination election . . . undeniably avoids any proliferation of units, much less undue proliferation, because it does not result in the creation of and election in a separate, additional unit." *St. Vincent*, 357 NLRB at 855. Instead, "an *Armour-Globe* election permits employees sharing a community of interest with an already represented unit of employees to vote whether they wish to be added to the existing unit." *Id.* In that sense, a self-determination election "further[s] the petitioned-for employees' interest in obtaining representation

while avoiding any undue proliferation of units," the principal concern of the Health Care Rule. *Id*. at 856.

## B.

Petitioner Rush University Medical Center is an acute-care teaching hospital located in Chicago, Illinois. The International Brotherhood of Teamsters, Local 743 (the Union) has long represented a unit of employees in different nonprofessional job classes at Rush. The unit is a preexisting nonconforming unit under the Health Care Rule because it includes employees from two of the eight enumerated categories—"other nonprofessional" employees and "skilled maintenance" employees—but it does not include all of Rush's employees in either category.

In 2014, the Union petitioned for a special election that would enable Rush's unrepresented Patient Care Technicians (PCTs) to vote to be included in the preexisting nonconforming unit. PCTs qualify as "other nonprofessional" employees for purposes of the standardized units set forth in the Health Care Rule. The proposed voting group for the *Armour-Globe* election consisted of the roughly 245 unrepresented PCTs. Rush opposed the proposed voting group on the ground that it was underinclusive. In Rush's view, the voting group, to comply with the Health Care Rule, needed to encompass all unrepresented nonprofessional employees (who numbered between 700 and 800), not just PCTs.

The Regional Director rejected Rush's arguments and found that the petitioned-for voting group was appropriate. The Board then denied Rush's request for review. The Board considered the case to be controlled by its prior decision in *St.*

*Vincent*, which, as explained, held that *Armour-Globe* elections need not conform to the Health Care Rule.

In the ensuing election, the residual PCTs voted to be included in the preexisting nonconforming unit. In order to test the certification, Rush refused to bargain. The Union filed a complaint with the Board, and the Board subsequently found that the refusal to bargain violated the National Labor Relations Act. *Rush Univ. Med. Ctr.*, 362 NLRB No. 23, at *2-3 (Feb. 27, 2015). Rush now petitions this court for review, and the Board cross-applies for enforcement of its order.

## II.

Rush contends that the Board's bargaining unit determination in this case relied on an impermissible interpretation of the Health Care Rule. In Rush's view, Section 103.30(c)'s requirement to conform to the Rule "insofar as practicable" should operate no differently in an *Armour-Globe* self-determination election than in an election that would add a new bargaining unit. In the former situation no less than the latter, Rush submits, a union must add all—not just some—residual employees who would be grouped within the same standardized unit under the Rule. According to Rush, the Board's contrary conclusion in *St. Vincent*, to which it adhered in this case, is arbitrary and inconsistent with the Board's prior decisions.

We reject Rush's challenge to the Board's interpretation and application of its own regulation. This Court will overturn the Board's determination of an appropriate collective bargaining unit only if "it is arbitrary or not supported by substantial evidence in the record." *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir.

2000). We "accord the Board an especially 'wide degree of discretion'" on questions of representation. *Randell Warehouse of Ariz., Inc. v. NLRB*, 252 F.3d 445, 447-48 (D.C. Cir. 2001) (quoting *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946)). When, as here, we review an agency's interpretation of its own regulations, we do not "decide which among several competing interpretations best serves the regulatory purpose." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Rather, we "give controlling weight to the Board's interpretation of its own rule unless it is plainly erroneous or inconsistent with the regulation itself." *Alldata Corp. v. NLRB*, 245 F.3d 803, 807 (D.C. Cir. 2001).

Here, the Board's interpretation of the Health Care Rule in *St. Vincent* is fully consistent "with the regulation itself." *Id.* The regulation's pertinent language says that, when "there are existing non-conforming units" and "a petition for additional units is filed," the "Board shall find appropriate only units which comport, insofar as practicable, with the appropriate unit" from the eight standardized units defined by the Rule. 29 C.F.R. § 103.30(c). That regulation, as the Board has explained, applies by its terms to "a petition for *additional units*." *Id.* (emphasis added). An *Armour-Globe* self-determination election, by its nature, does not involve the creation of any "additional units." Rather, it involves the inclusion of additional unrepresented employees in an already-existing unit. Consequently, the Board's exemption of *Armour-Globe* elections from Section 103.30(c) is entirely compatible with the regulation's terms.

Nor is the Board's understanding arbitrarily at odds with the regulation's object. The Health Care Rule guards against undue proliferation of bargaining units in acute-care hospitals. An *Armour-Globe* self-determination election, by definition, involves no proliferation of bargaining units at any facility.

*See St. Vincent*, 357 NLRB at 855. Rather, the number of bargaining units remains constant. To be sure, the Board could elect to require that the bargaining unit in an *Armour-Globe* election, just like in a representation election to create a new unit, must encompass all residual employees who would fit within the same unit among the Rule's standardized units. But the Board did not act arbitrarily by drawing a distinction between the two types of elections. Instead, as the Board explained in *St. Vincent*, its interpretation "further[s] the petitioned-for employees' interest in obtaining representation" through a self-determination election "while avoiding any undue proliferation of units." *Id.* at 856.

Rush's principal argument is not that the Board's interpretation in *St. Vincent* conflicts with the regulation's text or objectives. Rather, Rush devotes the bulk of its attention to contending that *St. Vincent* is arbitrary because it departs, without reasoned explanation, from the Board's prior decision in *St. John's Hospital*, 307 NLRB 767 (1992). Rush's argument lacks merit.

In *St. John's*, there were nonconforming units predating the Health Care Rule that included some of the hospital's skilled maintenance employees. An incumbent union petitioned for a representation election that would have added a new bargaining unit encompassing some (but not all) of the unrepresented skilled maintenance workers. The Board declined to allow the representation election. The Board explained that, in the context of a hospital with a preexisting nonconforming unit, a union desiring to add a new unit must include within the unit "all unrepresented employees residual to the existing unit." *Id.* at 768. Moreover, because the case involved not a new union but instead an "incumbent wishing to represent employees residual to those in its existing unit," the union was required to "do so by adding them to the

existing unit" rather than creating a new unit, "usually by means of a self-determination election." *Id.* The Board therefore remanded "to the Regional Director for direction of a self-determination election." *Id.*

Rush seizes on the Board's apparent understanding of the scope of the proposed bargaining unit for the self-determination election that was to be conducted on remand. The Board assumed that the union would represent "*all* the remaining skilled maintenance employees as part of its existing unit." *Id.* (emphasis added). As Rush sees it, *St. John's* thereby established an inexorable command that, whenever a union conducts an *Armour-Globe* self-determination election to add unrepresented employees to a preexisting nonconforming unit, the union must seek to add "all"—not just some—of the residual employees who fit within the standardized bargaining unit. *St. John's* need not be read in that fashion, however.

To the contrary, the Board in *St. Vincent* gave a reasoned explanation of why it did not understand *St. John's* to have established a blanket requirement that a union, when seeking a self-determination election to add employees to a preexisting unit, must include all residual employees belonging to the same standardized unit. *St. John's* involved an effort to create "an additional, residual unit." *St. Vincent*, 357 NLRB at 856. In *St. Vincent* (as in this case), by contrast, the union sought to add employees "to its existing unit in a self-determination election." *Id.* Moreover, although the Board in *St. John's* remanded for the potential conduct of a self-determination election that would encompass "all remaining unrepresented skilled maintenance employees"— not just some of those residual employees—the Board "did not specifically address whether" it was correct to "includ[e] the skilled maintenance employees not originally sought by

the" union when it petitioned for an election to create a new unit. *Id.*

In other words, the Board explained in *St. Vincent*, the decision in *St. John's* had *assumed* that a self-determination election on remand would include all residual employees, but without deciding whether that assumed scope was correct, much less compelled. That assumption had arisen in *St. John's* because the Regional Director would have allowed a representation election to add a new unit, but only if the new unit included all residual employees. *See id.* And when the employer sought review by the Board of the Regional Director's allowance of an election to create a new unit, the employer did not dispute that, if the union were to seek to add employees to a preexisting unit rather than create a new unit, the self-determination election would—consistent with the Regional Director's contemplated election of a new unit— include all residual skilled maintenance workers. As the Board observed in *St. Vincent*, there was "no indication [in *St. John's*] that any party requested that the Board reconsider the Regional Director's inclusion of all remaining unrepresented skilled maintenance employees if an election"—either a self-determination election or an election to add a new unit— "were to be held." *Id.*

That assumption explains the Board's statement in *St. John's* that, "in the circumstances presented here, because the [union] already represents a nonconforming unit of skilled maintenance employees, if the [union] seeks to represent any of the remaining unrepresented skilled maintenance employees, the [union] must represent all the remaining skilled maintenance employees as part of its existing unit." *St. John's*, 307 NLRB at 768. The reference to "all the remaining skilled maintenance employees" did not establish a requirement that *every* self-determination election necessarily

encompass all residual employees. Rather, the reference merely captured the assumed scope of the bargaining unit in that case, which none of the parties had challenged before the Board. The primary point of the quoted statement was instead to establish that the union, as an incumbent union, would need to add "the remaining skilled maintenance employees as part of its existing unit" rather than create a new unit. *Id.*

In *St. Vincent*, the Board described its prior decision in *St. John's* in just those terms. *See St. Vincent*, 357 NLRB at 856 & n.12. As a result, the Board in *St. Vincent* remained free to conclude—as it did—that an *Armour-Globe* self-determination election falls outside the Health Care Rule, and thus need not include all residual employees who would fit in the same standardized unit.

Indeed, any contrary conclusion in *St. Vincent* would have been highly difficult to square with the Board's intervening decisions after *St. John's*. In two decisions, the Board specifically construed Section 130.30(c) to apply *only* in circumstances involving creation of an additional, new unit. *See Crittenton*, 328 NLRB at 880; *Kaiser*, 312 NLRB at 934. In both decisions, accordingly, the Board declined to apply Section 130.30(c) because the circumstances did not involve any new unit. *See Crittenton*, 328 NLRB at 880; *Kaiser*, 312 NLRB at 934. *St. Vincent* likewise involved no new unit. Against the backdrop of the decisions in *Crittenton* and *Kaiser*, the Board would have been hard-pressed to conclude in *St. Vincent* that, in an *Armour-Globe* election in which there necessarily is no new bargaining unit, Section 130.30(c) nonetheless somehow applies. The Board reasonably decided otherwise. In short, because *St. Vincent* reasonably found *Armour-Globe* elections to fall outside the scope of Section 103.30(c), and because this case involves an *Armour-Globe*

election, we reject Rush's argument that the bargaining unit in this case impermissibly conflicted with Section 103.30(c).

This brings us, finally, to Rush's contention that, even if the bargaining unit need not have encompassed *all* residual nonprofessional employees, it at least needed to include employees in the job classification of Nurse Assistant II. Those employees, Rush urges, have highly similar job duties to the PCTs who cast votes in the self-determination election. The Nurse Assistant IIs thus should have been included in the voting group, Rush asserts. The Board rejected that argument, and we perceive no basis for overturning the Board's determination.

When considering petitions for *Armour-Globe* elections, the Board looks to the proposed voting group to "determine the extent to which the employees to be included share a community of interest with unit employees, as well as whether the employees to be added constitute an identifiable, distinct segment so as to constitute an appropriate voting group." *Warner-Lambert Co.*, 298 NLRB 993, 995 (1990). In declining in this case to include Nurse Assistant IIs in the proposed voting group, the Board relied on *Rhode Island Hospital*, 313 NLRB 343 (1993). There, the Board focused on certain characteristics of the employees in the challenged voting group when assessing the relevant community of interest. In particular, members had no requirement that they be enrolled in school to maintain employment; members received employment benefits; and members' pay rates were affected by performance evaluations. *Id.* at 365. Because the excluded employees did not have those characteristics, the Board found they did not share a community of interest with the voting group. *Id.* at 364-65. In this case, precisely the same three factors distinguish Nurse Assistant IIs from PCTs. Consequently, the Board's decision to uphold the Regional

Director's determination that Nurse Assistant IIs did not share a community of interest with PCTs was neither arbitrary nor unsupported by substantial evidence.

\*   \*   \*   \*   \*

For the foregoing reasons, we deny Rush's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*